UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BREON WILKINS,<br><br>    Plaintiff,<br><br>    v.<br><br>FEDERAL EXPRESS CORPORATION,<br><br>    Defendant. | Case No. 1:23-CV-00397-GSL |

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment. [DE 25]. For the following reasons, the Court GRANTS Defendant's motion.

### I.     UNDISPUTED FACTS

Plaintiff, an African American man, was employed by Defendant from December 2020 to October 2022. [DE 27, ¶ 1]; [DE 27-1, 33:3–13]. During his time working for Defendant, Plaintiff was a swing driver. [DE 27, ¶ 1]. As a swing driver, Plaintiff was not responsible for any specific delivery routes. [*Id.* at ¶ 12]. Instead, he was assigned routes of other couriers, who were on vacation or otherwise unavailable. [*Id.*]. Thus, his assigned route could change every day. [*Id.*].

In June 2022, Plaintiff began reporting to Caleb Brandt, an Operations Manager. [*Id.* at ¶¶ 2, 16]. Mr. Brandt is white. [*Id.* at ¶ 2]. Shortly after becoming Plaintiff's manager, Mr. Brandt issued Plaintiff a warning letter because of a heated exchange between the two of them. [*Id.* at ¶ 19]. The exchange involved Plaintiff becoming "irritated" at Mr. Brandt after Mr. Brandt "repeatedly asked him for his assigned route number for the day," escalating to Plaintiff yelling at Mr. Brandt in front of other employees. [*Id.* at ¶ 19]; [DE 27-1, Exhibit 8].

In August 2022, Mr. Brandt issued Plaintiff a second warning letter for "exhibiting disruptive behavior." [DE 27, ¶ 21]. This incident occurred when Mr. Brandt attempted to discuss performance expectations with Plaintiff and Plaintiff's failure to meet these expectations. [*Id.*]; [DE 27-1, Exhibit 8]. In response, Plaintiff "display[ed] blatant and public disrespect." [*Id.*]. Because this was the second disciplinary letter within twelve months, Plaintiff was granted a "Decision Day," which is a day off, with pay. [DE 27, ¶ 23]. After Decision Day, an employee has two options: 1) resign or 2) submit a "detailed Personal Performance Agreement," in which the employee "must clearly outline what [he] plan[s] to do to correct the performance problem." [*Id.* at ¶ 24]; [DE 27-1, Exhibit 8]. After his Decision Day, Plaintiff chose to remain employed with Defendant and submitted a Personal Performance Agreement, which stated, in part, that Plaintiff agreed 1) to change his attitude and aggressiveness towards Mr. Brandt, 2) to not raise his voice, and 3) to control himself and his conduct within Defendant's property. [DE 27, ¶ 25].

In October 2022, Mr. Brandt issued Plaintiff a third warning letter for crashing a courier van into a parked vehicle. [*Id.* at ¶ 26]. Plaintiff's employment was terminated after this third disciplinary letter. [*Id.* at ¶ 28].

Defendant's Performance Improvement Policy (P2-50) and Acceptable Conduct Policy (P2-5) provide that three disciplinary incidents within a 12-month period normally result in termination. [*Id.* at ¶ 29]. The policies prohibit misconduct, which includes disruptive conduct, insubordination, use of abusive language or behavior, and display of blatant or public disrespect toward or about any employee while on duty. [*Id.* at ¶ 32]. Plaintiff had access to these policies during his employment with Defendant. [*Id.* at ¶ 31].

2

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of" the evidence that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive a properly supported motion for summary judgment, "the nonmoving party must present evidence sufficient to establish a triable issue of fact on all elements of its case." *McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 969 (7th Cir. 2020).

In deciding a motion for summary judgment, the court may "not weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Instead, the court's only task is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* (internal citation omitted). If there is no genuine dispute of material fact, then summary judgment is appropriate, and the movant is entitled to judgment as a matter of law. *Id.*

## III. DISCUSSION

Plaintiff alleges that Defendant racially discriminated against him by wrongfully terminating him, in violation of Title VII of the Civil Rights Act of 1964 and Fort Wayne Ordinance G-21-78. [DE 1]. Discrimination claims brought under Title VII or this local ordinance are subject to the same analysis. *Richter v. Evans*, No. 14-CV-261, 2014 WL 4700852, at *2 n.1 (N.D. Ind. Sept. 22, 2014) (citing *Hughes v. Wal-Mart Stores E. LP*, No. 11-CV-400,

2013 WL 3155400, at * 9 (N.D. Ind. June 20, 2013)). Therefore, the Court will evaluate Plaintiff's Title VII claim, with the conclusion being the same for the local ordinance claim.[1]

Under the *McDonnell Douglas* framework, to succeed on a Title VII discrimination claim, Plaintiff has the burden to establish a *prima facie* case of discrimination by showing that 1) he is a member of a protected class, 2) he was meeting his employer's legitimate expectations, 3) he suffered an adverse employment action, and 4) similarly situated employees who were not members of his protected class were treated more favorably. *Anderson v. St.*, 104 F.4th 646, 652 (7th Cir. 2024) (referencing the burden-shifting framework for employment discrimination cases set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). If Plaintiff successfully establishes a prima facie case for discrimination, then the burden shifts to Defendant to "articulate[] a legitimate, nondiscriminatory reason for the adverse employment decision." *Id.* at 653 (quoting *Smith v. Chicago Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015)). The burden then shifts back to Plaintiff to demonstrate that Defendant's stated reason for firing him was pretextual. *Id.* That final burden "requires demonstration by a preponderance of the evidence that [Defendant's] stated reasons for [Plaintiff's] firing were *false*, not that they were unfair or baseless." *Id.*

### A. *Prima Facie* Case Under the *McDonnell Douglas* Framework

Under the *McDonnell Douglas* burden-shifting framework, Plaintiff fails to establish a prima facie case for discrimination under Title VII. Specifically, he fails to satisfy the fourth element.[2]

---

[1] Defendant argues that Plaintiff's Fort Wayne Ordinance claim is time-barred. [DE 25]. The Court does not address this issue because the Court's conclusion on the merits is dispositive.

[2] The Court is also skeptical that Plaintiff can satisfy the second element—meeting his employer's legitimate expectations—given his extensive disciplinary history. However, Defendant does not directly attack this element of the prima facie case.

The fourth element of the prima facie case requires that Plaintiff show that he was treated less favorably than a similarly situated employee outside his protected class. *See Reives v. Illinois State Police*, 29 F.4th 887, 892 (7th Cir. 2022). Plaintiff does not need to identify an employee that is "identical in every conceivable way" but the employee "must be directly comparable to the plaintiff in all material respects." *Id.* (cleaned up). At a minimum, Plaintiff "must at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct." *Anderson*, 104 F.4th at 653. "Whether a comparator is similarly situated is typically a question for the fact finder, unless, of course, the plaintiff has no evidence from which a reasonable fact finder could conclude that the plaintiff met his burden on this issue." *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 958 (7th Cir. 2021).

Here, Plaintiff provided no evidence from which a reasonable factfinder could conclude that Plaintiff met his burden to identify a similarly situated employee, outside his protected class, who was treated more favorably than him. In his response to the instant motion, Plaintiff identifies three potential comparators: Bryan Piekarski, Christian Mendez, and an unnamed female "white employee." [DE 32, pages 6–7]. None of these employees are adequate comparators.

First, regarding Mr. Piekarski, Plaintiff did not demonstrate that he was treated less favorably than Mr. Piekarski. The record refers to only a single event involving Mr. Pierkarski, where he sent "an inappropriate aggressive text message" to Mr. Brandt. [DE 27, ¶ 5]; [DE 33, ¶ 5]. After this incident occurred, Mr. Brandt issued him an OLCC.[3] [DE 27, ¶ 35]; [DE 34-2, ¶

---

[3] An OLCC or "Documented Counseling" is the least severe response to a policy violation. [DE 27-1, Exhibit 22]. While it is considered "non-disciplinary," a OLCC may be considered when determining whether discipline is warranted after a subsequent violation. [*Id.*].

5

19]. This was Mr. Pierkarski's first and only disciplinary issue during his employment. [DE 27, ¶ 36]; [DE 33, ¶ 36]; *see* [DE 27-2, ¶¶ 10–11 and Exhibit 1]. In similar fashion, Plaintiff's first disciplinary issue involved "insubordinate or disruptive" conduct, where Plaintiff verbally berated his supervisor.[4] [DE 27, ¶ 17–18]; [DE 33, ¶ 17–18]. Plaintiff's supervisor issued him an OLCC. [*Id.*]; [DE 27-1, Exhibit 08] (noting aggressive behavior toward Plaintiff's supervisors and his peers). Both Mr. Piekarski and Plaintiff were treated the same after their first disciplinary issue.

Notwithstanding, Plaintiff argues that Mr. Brandt treated Plaintiff less favorably because Mr. Brandt issued Plaintiff a warning letter for a subsequent disciplinary incident.[5] [DE 32, page 9]. This is clearly distinguishable from Mr. Pierkarski's one-time receipt of a OLCC. By the time Plaintiff was issued this warning letter, he had already developed a lengthy disciplinary history. [DE 27-1, Exhibit 08] (multiple prior OLCC entries for aggressive behavior with managers and poorly performed work tasks). Under Defendant's Acceptable Conduct Policy, Plaintiff's "pattern of misconduct" and "repeated deficiency" was deserving of more severe disciplinary action. [*Id.*]. This contrasts with Mr. Pierkarski's receipt of a single OLCC for his one and only disciplinary incident. Plaintiff's receipt of a warning letter and Mr. Pierkarski's receipt of an OLCC are not comparable, but, instead, represent different warranted punishments for corresponding varying degrees of disciplinary history.

Second, regarding Mr. Mendez, Plaintiff did not demonstrate that Mr. Mendez is a proper comparator because he offers insufficient evidence that he and Mr. Mendez were similarly

---

[4] At that time, Plaintiff's supervisor was not Mr. Brandt.

[5] A "warning letter" is a disciplinary response to a policy violation and is more severe than an "OLCC." [DE 27-1, Exhibit 22].

6

situated. The only evidence on this issue is a declaration by Mr. Mendez, offered for the first time in an attachment to Plaintiff's response to the instant motion. [DE 34-5]. In short, the declaration states that Mr. Mendez was involved in a "fender-bender", that this accident "caused more damage" than Plaintiff's accident, and that Mr. Brandt did not discipline Mr. Mendez for the accident. [*Id.*]. This declaration, however, offers no details about Mr. Mendez's accident, his disciplinary history, or the nature and scope of his employment. Also, the affidavit does not specify how Mr. Mendez became aware of Plaintiff's accident, whether Mr. Mendez was a witness to the accident, whether the accident occurred while Mr. Mendez was still employed with Defendant, or otherwise establish a foundation for Mr. Mendez's knowledge of the circumstances of Plaintiff's termination. For these reasons, the Court is unable to analyze Mr. Mendez as a proper comparator.

Third, regarding the unnamed female employee, Plaintiff offers almost no evidence or support that would enable the Court to analyze this employee as a comparator. Plaintiff alleges that this employee was treated more favorably than him because she "was not [] disciplined or fired" after she was involved in a "backing incident." [DE 32, page 6]. The only evidence in the record regarding this female employee is a single paragraph in Mr. Piekarski's declaration:

> Another example of [Plaintiff] being treated differently by Brandt than [me] [] involves the backing accident that [Plaintiff] was involved in that resulted in him being terminated . . . . Specifically, I recall a white female co-worker, I don't recall her name, who had bumped into a parked car[,] and she essentially got a coaching from Brandt where he did a ride along with her the next day. She wasn't fired."

[DE 34-2, ¶ 22]. Mr. Piekarski's declaration offers no foundation for his knowledge of the circumstances surrounding this female employee's accident. [*Id.*]. The declaration is also void of any details regarding the incident, management's response, the employee's disciplinary history,

7

and the employee's job and scope. [*Id.*]. Based off of Plaintiff's offered evidence, this employee cannot be evaluated as a proper comparator.

Plaintiff also alleges other examples of where Mr. Brandt treated black employees less favorably than white employees. [DE 32, pages 6–7]; [DE 34-4]. This evidence is introduced through a declaration by Patricia Saffold, Plaintiff's former coworker. [*Id.*]. Each example is described only very briefly, and each lacks sufficient details for the Court to identify any individuals who might be "similarly situated" to Plaintiff and could serve as proper comparators for this analysis. Moreover, none of the examples involve a "discriminatory adverse action," which requires a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibility, or a decision causing a significant change in benefits." *Wilson v. Brennan*, 724 F. App'x 466, 469 (7th Cir. 2018). Instead, the examples involve lesser alleged offenses, such as a change in the tone of voice, number of routes or hours worked, or the difficulty of work tasks. None of these rise to level of an adverse employment action under Title VII, and, therefore, none of the examples are applicable to the Court's analysis.

Because the record is void of any suitable comparators or similarly situated employees, Plaintiff failed to assert a prima facie case for discrimination under the *McDonnell Douglas* framework. *See Igasaki*, 988 F.3d at 958.

### B. Pretextual Reason

Even if Plaintiff established a prima facie case for discrimination, he cannot demonstrate that Defendant's purported reasoning for his termination was pretextual. After an employer provides a "legitimate nondiscriminatory reason" for an employee's termination, the employee must "provide evidence establishing a genuine dispute about whether the employer's stated

reason was a *pretext* for prohibited discrimination." *Anderson*, 104 F.4th at 653 (quoting *Smith*, 806 F.3d at 905) (emphasis added). "That burden requires demonstration by a preponderance of the evidence that the stated reasons for [the employee's] firing were false, not that they were unfair or baseless." *Id.* (citing *Brooks v. Avancez*, 39 F.4th 424, 435–36 (7th Cir. 2022)).

Defendant identified a legitimate, nondiscriminatory reason for Plaintiff's termination. Per the Defendant's employment policies, multiple disciplinary incidents may warrant termination. [DE 27, ¶ 29]; [DE 33, ¶ 29]. Specifically, Defendant's Acceptable Conduct Policy states:

> The receipt of three notifications of deficiency within a 12-month period normally results in termination. However, an employee's entire employment history should be reviewed. Based on the severity of the occurrence an employee may be terminated with less than three notifications of deficiency within a 12-month period. Management should consider the relative nature of all infractions for disciplinary purposes.

[DE 27-1, Exhibit 22]. In other words, termination after three disciplinary events is the normal practice, but termination may be warranted for fewer violations based on their severity. Defendant received three disciplinary warning letters in a very short period of time: in June 2022, in August 2022, and in October 2022. [DE 27, ¶¶ 19, 21, and 26]. Plaintiff does not dispute receiving these three warning letters. [DE 33, ¶¶ 19, 21, and 26]. After the incident that led to the final warning letter, Defendant's management conducted an investigation and review, which resulted in Plaintiff's termination. [DE 27, ¶ 28]; [DE 27-1, Exhibit 17]. Defendant's decision to terminate Plaintiff is legitimate and nondiscriminatory because it was based on Plaintiff's repeated violations of company policies and multiple disciplinary actions.

Plaintiff failed to meet his burden of rebuttal because he did not demonstrate that Defendant's stated reason for his termination was false or pretext for discrimination. In his response to the instant motion, Plaintiff attaches several declarations from former co-workers to

9

show the "double standard" applied to Plaintiff and to question the merits of his termination. [DE 34-1]; [DE 34-2]; [DE 34-3]; [DE 34-4]; [DE 34-5]; *see* [DE 31, page 10]. However, none of the declarants personally observed any of the incidents that led to each of Plaintiff's three warning letters. Instead, the declarations offer opinions to Mr. Brandt's management style, Plaintiff's work performance, and other interactions between Plaintiff and Mr. Brandt. Plaintiff does not offer any evidence toward the three disciplinary events that led to Plaintiff's termination, nor otherwise rebut Defendant's stated reason for Plaintiff's termination. In short, Plaintiff has identified "no facts giving rise to a reasonable inference that the stated reasons for [his] firing were false, or that some other reason for firing [him] existed." *Anderson*, 104 F.4th at 654.

Plaintiff failed to identify an appropriate comparator, and he also failed to raise a triable issue of fact regarding Defendant's stated reasons for firing him. Therefore, viewing the evidence as a whole, no reasonable jury could find that Plaintiff's termination was an act of discrimination.

## CONCLUSION

The Court hereby GRANTS Defendant's Motion for Summary Judgment [DE 25]. The Court DIRECTS the Clerk of Court to enter judgment against Plaintiff and in favor of the Defendant. The Plaintiff takes nothing by his Complaint.

SO ORDERED.

ENTERED: March 19, 2025

/s/ GRETCHEN S. LUND
Judge
United States District Court